UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CARL BARRETT,

    Plaintiff,

  v.          Case No. 20-C-1128

ARMOR CORRECTIONAL
HEALTH SERVICES INC., et al.,

    Defendants.

---

**DECISION AND ORDER**

---

  Plaintiff Carl Barrett, who is serving a state prison sentence at Green Bay Correctional Institution and is representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Milwaukee County Jail. On March 16, 2021, Defendants Armor Correctional Health Services Inc., Mahita Gone, and Mercy Mahaga (the Armor Defendants) moved for summary judgment on the ground that Barrett failed to exhaust the available administrative remedies before he initiated this lawsuit. Dkt. No. 37. Two days later, on March 18, 2021, Defendants Nancy Evans, Matthew McCoy, Janine Montoya, Devonta Townes, and Jackeline Velez (the County Defendants) moved for summary judgment on the same ground. The Court will deny the Armor Defendants' motion and grant the County Defendants' motion.

**BACKGROUND**

  Barrett is proceeding on Eighth Amendment claims against the Armor and County Defendants based on allegations that they were deliberately indifferent to his serious medical needs. He also is proceeding on a First Amendment claim against the County Defendants based

on allegations that they retaliated against him by placing him on disciplinary status for reporting a medical emergency.

Barrett, who had injuries from having been shot in his face, arm, and finger, began filing grievances regarding his medical needs within a week of arriving at the jail. *See* Dkt. No. 42 at ¶2; Dkt. No. 39-2 at 2. On May 11, 2016, Barrett submitted his first grievance explaining that he had bullets lodged in his jawbone and shoulder and was in pain. Dkt. No. 39-2 at 3. He noted that he had been examined by "Mary" but she only took his temperature and blood pressure. *Id.* According to Barrett, she told him he would receive none of the treatment or medication he had been receiving at his prior institution due to County policy. *Id.* Shortly thereafter, Barrett submitted a second grievance asserting that the doctor at his prior institution had prescribed Tylenol 3 and gabapentin for his pain, but he had not seen a doctor or received any medication since arriving at the jail. *Id.* at 2. On May 16, 2016, Barrett received an acknowledgement informing him that his "grievance ha[d] been sent to Medical for a response." *Id.* at 1. There is no record of Barrett receiving a response from medical.

On July 15, 2016, Barrett submitted several grievances noting that he had reported a "medical emergency" to the County Defendants, but they had ignored him and refused to contact health services. Dkt. No. 39-2 at 9-10. Barrett asserted that they had ignored his emergency "due to an MCJ shakedown" and had placed him in disciplinary status for reporting his shoulder pain. *Id.* at 9. Two days later, Barrett received a response informing him that Armor Medical was aware of his shoulder pain, for which he was receiving Tylenol. *Id.* at 8. The response also noted, "[a]s to the discipline issue, you were a refusal to lock in your cell in Pod 5C on July 15th, 2016. That is why you were placed on discipline." *Id.* There is no record of Barrett appealing the response or raising his complaints about the County Defendants in a subsequent grievance.

A couple of weeks later, on July 26, 2016,[1] Barrett filed a grievance explaining that "the inside of [his] finger (guts) is pushing out of [his] fingernail." Dkt. No. 39-2 at 17. He stated that the wound was bleeding and had puss, and he believed it was becoming infected. *Id.* Barrett asserted that he had filed "numerous pink & white & white [sic] slips" and that medical was and had been aware of the problem but they were refusing to address it. *Id.* Barrett complained of "constant pain, tingling, numbness of [his] finger with no treatment." *Id.* The next day, Barrett received an acknowledgement informing him that his "grievance will be forwarded to Medical for a response." *Id.* at 16. That same day, the jail sent a letter to medical, explaining that Barrett had complained that he was being refused medical attention for his finger. *Id.* at 15. The letter requested medical to "read the attached grievance and provide a response in a format that can be forwarded to the inmate by:7/31/2016." *Id.* at 15. There is no record of Barrett receiving a response from medical.

Several months later, on October 25, 2016, Barrett filed yet another grievance complaining about being denied medical care. Dkt. No. 39-2 at 27. He explained that he spoke with a "Dr. Maheeda" and, while she did not know why he was there, he told her he has several rods in his body and that the rod and screw in his finger were turning green and looking rusty. *Id.* He noted that he had been denied medical treatment and medication since May 6, 2016 and said his condition was "only getting worse." *Id.* The next day, Barrett received an acknowledgment informing him that his grievance would be forwarded to medical for a response. *Id.* at 25. The jail also wrote a letter addressed to the "Nursing Supervisor" informing her that Barrett had complained he was not getting adequate medical treatment. *Id.* at 26. The letter requested that she

---

[1] Barrett dated his grievance July 28, 2016; however, based on the date on the response, which specifically references the issue Barrett raises in his grievance, it appears that Barrett placed the incorrect date on his grievance.

3

provide a response that could be forwarded to Barrett by October 31, 2016. *Id.* There is no record that Barrett received a response from the nursing supervisor.

On November 3, 2016 and again on January 23, 2017, Barrett filed grievances asserting that he continued to receive inadequate medical treatment. Dkt. No. 39-2 at 33, 35. Barrett again complained about the rods in his finger and leg and the bullets in his body. *Id.* He asserted that he was not receiving treatment or medication for his swelling and pain. *Id.* He explained that his finger condition and pain were worsening, explaining that his nail was swollen and green and the skin was black and peeling. *Id.* Barrett was informed that his grievances had been forwarded to medical for a response. *Id.* at 31, 34. Medical was asked to provide a response that could be forwarded to Barrett, *id.* at 32, but there is no record that any response was provided.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Prison Litigation Reform Act, which applies to this case because Barrett was a prisoner when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). According to the U.S. Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

That said, a prisoner is not required to exhaust the administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

Defendants assert that the grievance procedure at the jail is straightforward. According to the policy, an inmate "concerned about an issue" must complete a grievance form, which "will be responded to immediately." Dkt. No. 44-11 at 1. If an inmate is not satisfied with the response,

5

he or she may appeal the response by providing additional supporting documentation including the full names of witnesses. *Id.* at 2. The Captain will review and rule on an appeal. *Id.* Once the Captain has ruled, an inmate may make one final appeal to the Jail Commander. *Id.* This final appeal must include all previous submissions and supporting evidence. *Id.*

### A. The County Defendants

The County Defendants concede that, on July 15, 2016, Barrett completed the first step of the grievance process by filing multiple grievances complaining that the County Defendants had ignored his reports of a medical emergency and had retaliated against him by placing him on disciplinary status for persistently seeking medical treatment. Two days later, on July 17, 2016, a lieutenant responded to Barrett, informing him that Armor Medical was aware of his shoulder pain (the subject of the alleged "medical emergency"), that an appointment was being made for him to see a provider, and that he was being provided Tylenol. Dkt. No. 39-2 at 8. The lieutenant also addressed Barrett's complaint of retaliation, explaining that Barrett had been placed on discipline because he refused to lock in his cell. *Id.* Barrett did not appeal the lieutenant's response.

Barrett asserts that he did not appeal the response because, unlike the Department of Corrections institutions, the jail does not provide appeal forms to the inmates. This argument is a non-starter. As the County Defendants highlight, the policies at Wisconsin state prisons are irrelevant, and the jail's procedure makes no mention of inmates having to use an appeal form. Barrett's insistence that the administrative remedies were unavailable to him because he was prevented from complying with a non-existent requirement is meritless. *See King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about.").

6

Barrett also asserts that Defendant Devonta Townes told him that he could not appeal responses related to his medical treatment because medical issues were handled by Armor, not the jail. Townes disputes that he told Barrett that, but whether he did is irrelevant because Barrett's claims against the County Defendants are not based on allegations of inadequate medical treatment. Barrett's claims are premised on the County Defendants allegedly refusing to relay his requests for emergency care to Armor and allegedly retaliating against him for making those requests. These issues, which are non-medical in nature, are the ones Barrett raised in his July 15 grievances, and jail staff promptly responded to them. Barrett, however, did not pursue his grievances any further, and he provides no evidence to support a conclusion that he was misled regarding his opportunity to appeal grievances involving non-medical issues. Accordingly, the Court finds that the administrative remedies were available to Barrett on his claims against the County Defendants. And, given that the County Defendants have shown that Barrett failed to complete every step in the grievance process in connection with his claims against them, they are entitled to summary judgment.

### B. The Armor Defendants

Like the County Defendants, the Armor Defendants assert that Barrett's claims against them are procedurally barred from consideration because he failed to appeal the responses to his many grievances about inadequate medical care. The fatal flaw in the Armor Defendants' argument is that Barrett never received responses to his many grievances about inadequate medical care. Jail staff consistently notified Barrett that his grievances had been forwarded to medical *for a response*, and jail staff even wrote letters to medical informing them of Barrett's complaints and setting deadlines to respond, but the Armor Defendants provide no evidence supporting a conclusion that medical ever sent responses to Barrett (or that jail staff forwarded medical's

7

responses to Barrett). "Inmates must exhaust *available* administrative remedies, 42 U.S.C. § 1997e(a), and a remedy can be unavailable if jail officials do not respond to the grievance." *Banks v. Patton*, 743 F. App'x 690, 695 (7th Cir. 2018) (emphasis in original) (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). While the jail's policy states that "[g]rievances will be responded to immediately" Dkt. No. 44-11, it is silent about what an inmate should do if a grievance is acknowledged but never responded to. As previously highlighted, prisoners are not required to exhaust grievance procedures that they have not been told about. *King*, 781 F.3d at 896.

Further, the Armor Defendants do not explain why Barrett's later-filed grievances should not be treated as appeals. Just as the jail's policies do not require inmates to use appeal forms, they do not require inmates to mark or address their appeals in specific way. Nor are there time limits regarding the filing of appeals. In Barrett's later grievances he provides the names of the Armor Defendants and additional details about their lack of response to his worsening condition and he references his many prior grievances, thereby complying with the policy's requirement that additional information and prior writings be included. "[P]risoners need not file multiple, successive grievances raising the same issue," so these later grievances, which largely restate the same issues complained of in the earlier grievances that were never responded to, could have been treated as appeals. *See Banks*, 743 F. App'x at 695-96 (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). In short, the Armor Defendants bear the burden of proving that Barrett failed to exhaust. Because they have failed to carry that burden, the Court will deny their motion for summary judgment.

## CONCLUSION

For these reasons, the Armor Defendants' motion for summary judgment on exhaustion (Dkt. No. 37) is **DENIED**, the County Defendants' motion for summary judgment on exhaustion (Dkt. No.41) is **GRANTED**, and Barrett's claims against the County Defendants are **DISMISSED without prejudice**.

**SO ORDERED** at Green Bay, Wisconsin this  3rd  day of June, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge