UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL BARRETT,

        Plaintiff,

      v.                            Case No. 20-C-1128

ARMOR CORRECTIONAL
HEALTH SERVICES, INC., et al.,

        Defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Plaintiff Carl Barrett, a prisoner at Green Bay Correctional Institution who is represented by counsel, is proceeding on claims that, while he was incarcerated at the Milwaukee County Jail, Defendants Mercy Mahaga and Mahita Gone failed to address Barrett's complaints of severe pain and failed to adequately treat an infection in his finger, which was eventually amputated. He also is proceeding on a claim that Defendant Armor Correctional Health Services, Inc., has a policy of providing inadequate pain medication. On March 31, 2022, Defendants filed a motion for summary judgment. Dkt. No. 120. The Court recruited counsel to represent Barrett, and Barrett filed his response materials on May 26, 2023. Defendants did not file a reply brief. For the reasons explained below, the Court will deny Defendants' summary judgment motion.

## BACKGROUND

On March 16, 2016, Barrett was shot multiple times, including in the pinky finger of his right hand. Dkt. No. 163 at ¶4. Barrett states that the wounds caused extreme pain. *Id.* According to the Wisconsin Department of Corrections online inmate locator, Barrett was confined at the Milwaukee Secure Detention Facility on a probation hold beginning on April 10, 2016. About

a month later, on May 6, 2016, he was released from the hold and transferred to the Milwaukee County Jail, where he was confined pending trial on new charges. *See* Wisconsin Circuit Court Access, *State v. Barrett*, Case No. 2016CF1848; Dkt. No. 167 at ¶8. When Barrett was transferred to the jail, a medication sheet dated May 5, 2016, noted that Barrett had been prescribed 600 mg of gabapentin for pain relief; the prescription was set to expire on May 20, 2016. *Id.* at ¶¶6-7, 10. Barrett asserts that he had also received Tylenol with codeine, although it is not clear when or for how long he received that medication. Barrett asserts that the Tylenol with codeine and gabapentin significantly reduced his pain. Dkt. No. 163 at ¶7.

On May 7, 2023, the day after his transfer to the jail, Barrett was prescribed 500 mg of naproxen and 500 mg of acetaminophen for pain relief. On that day, Barrett twice refused the medication because he wanted Tylenol with codeine and gabapentin. A couple days later, on May 9, 2023, Barrett submitted a medical request stating that he was in extreme pain and explaining that he had been prescribed Tylenol 3 and gabapentin, physical therapy, and a sling prior to his transfer. That same day, Mahaga saw Barrett and took his vitals. Barrett received his arm sling a few days later. On May 17, 2016, Barrett refused sick call, complaining that he was not receiving more pain medication. Dkt. No. 167 at ¶¶11-17.

A few weeks later, on June 7, 2016, Barrett submitted a medical request stating that his arm and shoulder were extremely painful. He noted that the pain was unbearable, that he could not lay on his side, and that the fingers on his hand were numb and turning colors. Barrett was examined by Dr. Karen Horton about a week later and was prescribed 325 mg of acetaminophen twice a day for five days for chronic pain, and 500 mg of acetaminophen twice a day for acute pain. Two days later, on June 17, 2016, Barrett submitted a medical request stating that the Tylenol was only slightly working; he noted that he had constant pain and swelling. That same day,

Mahaga prescribed 500 mg of acetaminophen twice a day. A few days later, Mahaga took Barrett's vitals and noted that Barrett's symptoms were not relieved. *Id.* at ¶¶19-23.

Throughout July 2016, Barrett continued to complain about pain and swelling in his shoulder and pinky finger; he also worried that his finger might be infected. Barrett's prescription for acetaminophen was extended. On August 3, 2016, he submitted a medical request noting he needed pain medication because his body was aching and his pinky hurt. Mahaga examined him that same day and took a finger culture and his vitals. A couple days later, another nurse again prescribed 500 mg of acetaminophen. In mid-August 2016, a doctor prescribed an antibiotic, and by late August, no signs of infection were detected in Barrett's finger. *Id.* at ¶¶26-40.

On October 14, 2016, Barrett requested that his Tylenol prescription be refilled. On October 25, 2016, Gone saw Barrett and informed him medication is available in the canteen and can be prescribed for only a short period of time. On November 19, 2016, Barrett complained that the rods in his body were hurting, and his pinky was turning green and leaking pus. Two months later, on January 20, 2017, Barrett complained that the nail on his pinky was hurting and looked to be dying. He stated that he had been seen many times, only to be charged $20 for nothing. Less than a week later, Barrett again complained that his finger was infected and that medical was not following up. On January 28, 2017, Barrett was prescribed an antibiotic, Tylenol for pain, and a cold compress; he also was referred to a hand specialist. A few weeks later, on February 16, 2017, the hand specialist diagnosed osteomyelitis of the finger, and recommended surgery. Barrett's pinky finger was amputated on March 6, 2017. At the surgeon's direction, Gone prescribed Tylenol with codeine every four hours as needed for the pain. *Id.* at ¶¶41-70.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.

3

R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Although Barrett was a convicted prisoner on supervised release at the relevant time, he was confined at the jail pursuant to May 2016 orders that he be bound over for trial. *See* Wisconsin Circuit Court Access, *Wisconsin v. Barrett*, Case No. 2016CF1848. Given Barrett's status as a pretrial detainee, his claims that Gone and Mahaga failed to address his pain and infected finger arise under the Fourteenth Amendment. To prevail on a claim under the Fourteenth Amendment, a plaintiff must show that (1) he suffered from an objectively serious medical condition and (2) a defendant's response to his condition was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942-43 (7th Cir. 2019). When considering a defendant's response, the Court must "focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and [] gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

4

A jury could reasonably conclude that Mahaga's response to Barrett's complaints of pain was objectively unreasonable. Just two months prior to being confined at the jail, Barrett had been shot multiple times, including in his jaw, shoulder, and pinky finger. As a result, rods and pins were placed in his body. Barrett asserts that he was in extreme pain. In an apparent acknowledgment of the severity of Barrett's condition, providers at the Milwaukee Secure Detention Facility prescribed Tylenol with codeine and gabapentin, which is often used to address nerve pain. It does not appear that the prescription for Tylenol with codeine was active when Barrett arrived at the jail, but the prescription for gabapentin was active and not set to expire for several more weeks. Mahaga does not explain why this prescription was canceled or why she chose to prescribe Tylenol at a relatively low dose. The record shows that Barrett persistently complained that the Tylenol was ineffective and that he was nearly always in extreme pain.[1] Despite these persistent complaints, Mahaga continued prescribing Tylenol at the same dose, even while acknowledging that it was ineffective. Because a jury could reasonably conclude that her persistence in prescribing medication that she knew was ineffective was objectively unreasonable, she is not entitled to summary judgment on this aspect of Barrett's claim.

Whether Barrett has created a triable issue regarding Gone's response to his complaints of pain is a closer call. According to medical records, Gone saw Barrett only one time before his finger was amputated. On October 25, 2016, more than five months after Barrett was confined at the jail, Gone evaluated Barrett in response to his complaints of finger pain. According to the medical record, Barrett became frustrated that his pain was not being addressed and that he was having to pay for yet another examination. In response, Gone informed Barrett that pain

---

[1] Defendants highlight that on a handful of occasions Barrett refused to take the offered pain medication, but Barrett's refusal appears to have been motivated by the ineffectiveness of the medication, not because he was not in pain.

5

medication could be prescribed for only a short period of time and that he could purchase pain medication at the canteen. Barrett asserts that he saw Gone "regularly," Dkt. No. 163 at ¶13, implying that the medical records do not capture every interaction he had with Gone, but Barrett provides no details to support that assertion. Still, given the Court's obligation to draw all reasonable inferences in the non-moving party's favor, the Court concludes that Gone is not entitled to summary judgment on this aspect of Barrett's claim. Barrett had been consistently complaining of severe pain for months by the time he was evaluated by Gone. Rather than addressing those complaints, she told him he could purchase his own pain medication. Given how long Barrett had been suffering and given the severity of his pain, a jury could reasonably conclude that this response was objectively unreasonable.

Barrett's claim that the response of Mahaga and Gone to the infection in his finger was unreasonable is similarly close. According to medical records, Mahaga took a finger culture on August 3, 2016, and that was the last time she examined Barrett. Barrett exhibited no signs of infection just a few weeks later. As noted, medical records indicate that Gone examined Barrett only once, on October 25, 2016. At that time, Barrett complained of pain, but he did not mention signs of infection. It was not until mid-November that Barrett started complaining about a possible second infection. According to the medical records, Gone did not see Barrett again until after his finger had been amputated. But contrary to these medical records, Barrett asserts that Mahaga and Gone both witnessed the development of infection in his finger and that neither took steps to address the infection, Dkt. No. 163 at ¶¶13-14. Although he provides no details to support these assertions, the lack of specificity is understandable given that Barrett was an inmate experiencing severe pain and discomfort from significant wounds. While it appears that other nurses and doctors may have delayed treating Barrett's second infection, Mahaga and Gone cannot be vicariously liable for others' misconduct. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Nevertheless,

6

given Barrett's allegations that they too were aware of and took no action in response to his repeated complaints of pain and infection, the defendants' motion will be denied as to this aspect of his claim as well.

Finally, a jury could reasonably conclude that Armor had an unwritten policy of prescribing insufficient pain medication. To prevail on his claim, Barrett must show that (a) Armor had an express policy that, when enforced, caused a constitutional deprivation; (b) Armor had a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (c) his constitutional injury was caused by a person with final decision policymaking authority." *J.K.J. v. Polk County*, 928 F.3d 576, 587-88 (7th Cir. 2019).

Armor asserts that it did not have written policies prohibiting its employees from prescribing pain medication stronger than Tylenol. Barrett does not dispute this assertion, but he states that, regardless of what the written policies allowed, Armor's *unwritten* policies required its employees to avoid prescribing anything stronger than over-the-counter medication. Barrett asserts that Mahaga told him on at least one occasion and Gone told him on at least two occasions that they could not prescribe pain medication stronger than Tylenol because of Armor policy. Barrett also submitted the declaration of another inmate who stated under penalty of perjury that Mahaga told him something similar when she discontinued his prescriptions for oxycodone and gabapentin. Dkt. No. 164 at ¶2. Defendants did not address Barrett's assertions. A jury who believed Barrett's assertions could reasonably conclude that Armor had an unwritten policy of discouraging its employees from prescribing medication stronger than over-the-counter medication, even if the over-the-counter medication was insufficient to address an inmate's complaints of pain. Given that such an unwritten policy would be an objectively unreasonable

approach to treating inmates' severe pain, Armor is not entitled to summary judgment on this claim.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 120) is **DENIED**. The Court will schedule a telephonic status conference to discuss next steps.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of July, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

8